ALCORN *v*. ARK. STATE HOSPITAL.

5-2954                                                     367 S. W. 2d 737

Opinion delivered May 20, 1963.

666

*Erwin & Bengel,* for appellant.

*Pope, Pratt & Shamburger,* by *M. Jack Sims* and *Robert D. Ross,* for appellee.

Jim Johnson, Associate Justice. Appellee Arkansas State Hospital sued appellant J. N. Alcorn under the provisions of Arkansas Statutes §§ 59-230 and 59-230.1 for maintenance, medical care and treatment furnished to appellant's unmarried daughter during four long stays at the hospital between October 31, 1950 and March 1, 1961. The cause was submitted to the trial court on appellee's motion for judgment and on the following stipulation: (1) appellant admitted the correctness of the account and that his daughter, a member of his household when not confined in the State Hospital, received the benefit of appellee's services; and (2) that appellant raised two issues, (a) that a judgment in this cause of action is dependent upon appellant's ability to pay and therefore appellant should be entitled to submit proof as to his inability to pay, and (b) the statute of limitations is pleaded in bar of all charges made prior to the date of this action. After submission of trial briefs, the court found that the services constituted necessaries and that appellant was liable for the amount sued for. From that judgment comes this appeal.

For reversal appellant urges that the court erred in rendering judgment without requiring proof of ability to pay in order to make a prima facie case, and that the court erred in sustaining appellee's motion to exclude

evidence on the part of appellant with reference to his inability to pay and to maintain his daughter during the period of time involved and at all times during her confinement.

The statutes involved here are as follows:

59-230. ''Pay for maintenance of patients — Investigation of ability to pay. If any patient admitted to the State Hospital be found, upon examination, to possess an estate, over and above all indebtedness, more than sufficient for the support of his or her dependents, his or her natural or legally appointed guardian shall pay out of such estate into the office of the business manager of the State Hospital, in advance, an amount equal to one [1] month's maintenance, at a rate to be fixed by the Board of Control [State Hospital Board] from time to time on the basis of maintenance costs, and in addition, shall supply the patient with sufficient and suitable clothing, and shall remove said patient when so required and notified by the Superintendent. If the patient remains in the State Hospital more than one [1] month, such payments shall be made, monthly in advance, for the whole period during which the patient remains in the State Hospital. If the patient has no such estate of his own, then his obligation shall exist against any person who is legally bound to support such patient. Inability to pay shall not, however, cause any person to be refused admission to or discharged from the State Hospital.

''The business manager, following the admission of a patient into the State Hospital, shall make an investigation to determine the extent of the estate, if any, owned by the incompetent patient, and whether he has a duly appointed and acting guardian to protect his property and his property interest. The business manager shall also make an investigation to determine whether the patient has any relative or relatives legally responsible for the payment of maintenance, and shall ascertain the financial condition of such relative or relatives to determine whether in each case such relative or relatives are in fact financially able to pay such charges. All reports in connection with such investigations, together

with the findings of the business manager, shall be kept in the business office and may be inspected by interested relatives, their agents, or representatives, at any time upon application.''

59-230.1 ''Monthly statement of charges — Certification of unpaid accounts for collection. — Records and Information. The business manager of the State Hospital shall periodically ascertain the per capita cost of maintenance of patients and shall render monthly statements of charges therefor to the guardian or other person whose duty it is to provide care, maintenance or support of each patient, and he shall diligently attempt to collect such charges.

''The business manager shall make monthly certifications to the State Hospital Board of all patient accounts which have been due and unpaid for a period of three [3] months or more. The Hospital Board shall certify such unpaid account to some reputable person or agency, previously approved by the State Hospital Board of Control for collection. The compensation of such person or agency shall be paid from moneys collected on such accounts and the amount of such compensation shall not exceed charges as recommended and approved by the American Bar Association for similar collection work.

''Permanent records shall be kept by the business manager showing to whom and on what date or dates statements of charges are rendered, the amount thereof, payments made thereon, whether such charges have been certified by the Hospital Board, the action taken thereon by the Hospital Board, whether or not any money has been realized by the collecting agent of the Board and such other information as shall be deemed appropriate by the State Hospital Board.

''The Hospital Board shall require such person or agency as it may employ to collect outstanding charges for patient maintenance to furnish the Board with information as to what action has been taken by such agency, the results thereof, what accounts are thought to be uncollectible and such other information as the Board

shall deem appropriate. Such information shall be submitted to the Board over the certification of the collecting agency.

"This act shall be cumulative to existing statutes pertaining to maintenance charges against patients in the State Hospital.

59-115. "Persons liable for support. — The father and mother of poor, impotent or insane persons shall maintain them at their own charge, if of sufficient ability, and the children and grandchildren of poor, impotent or insane parents or grandparents shall maintain them at their own charge, if of sufficient ability."

In the recent case of *Arkansas State Hospital* v. *Kestle,* 236 Ark. 5, 364 S. W. 2d 804, decided after the trial court judgment in the case at bar, this court held that in seeking recovery under Ark. Stats. § 59-230, the burden of proving that a patient confined in the State Hospital has no estate is a condition precedent to recovery for necessaries and treatment against any person who is legally bound to support such patient.

The Act carefully provides for determination of whether the patient has an estate and also whether the patient has any relative or relatives legally responsible for the payment of maintenance who are in fact financially able to pay such charges. Upon determining that the patient is without sufficient estate, as decided in *Ark. State Hospital* v. *Kestle, supra,* it is apparent that the Legislature intended that those persons who may be secondarily liable be so notified, and upon notification to them that the State Hospital Board has made such determination, the secondary liability commences as to indebtedness incurred after receipt of such notice. This is not to say, however, that such liability is absolute.. The legislature in the enactment of Ark. Stats. § 59-115, as set out in full above, carefully made such liability, by the use of the words "if of sufficient ability," dependent upon ability to pay, thereby recognizing the humane responsibilities of society as a whole to provide for those unfortunates when the secondary obligors are

unable to pay. From the entire tenor of the liability statutes it is manifest that the Legislature never contemplated that one should be charged with the support of an incompetent to such an amount as to leave other members of his family in a destitute condition, 44 C. J. S. p. 180, § 75.

In the Kestle case, *supra,* this court acknowledged that under Ark. Stats. § 59-230, the legislature intended that the burden be placed on the State to show the patient's inability to pay as a condition precedent to imposing liability on the secondary obligor. It is our view that the enactment of § 59-230 in no way repealed § 59-115. The liability imposed on the patient by § 59-230 is a positive liability, whereas the liability imposed on the secondary obligor by § 59-115 is, as we have seen, conditioned on ability to pay. This being true, the claim of inability to pay would be in the nature of an affirmative defense to an action seeking to enforce the obligation, and the burden, therefore, to plead and show inability to pay would rest upon the person seeking to invoke the defense. *Faulkner* v. *State,* 6 Ark. (1 Eng.) 150.

Accordingly, it was error for the trial court to sustain appellee's motion to exclude appellant's evidence of his financial inability to maintain his daughter in the State Hospital.

Appellant's final contention for reversal is that the trial court erred in refusing to hold all that part of the bill more than three years old was barred by the Statute of Limitations.

The statutes here under consideration contain no statute of limitation. In *Jensen* v. *Fordyce Bath House,* 209 Ark. 478, 190 S. W. 2d 977, this court stated:

"In the absence of a specific provision in that regard, there is a diversity of opinion among the authorities as to the application of general statutes of limitation to the subordinate political subdivisions of a state. In a discussion of the question in 34 Am. Jur. p. 309, it is said: 'It has been said that the maxim *'nullum tempus occurrit regi'* is an attribute of sovereignty only, and cannot be

invoked by counties or other subdivisions of the state. In many cases, probably a majority, a distinction is drawn between cases where a subordinate political subdivision or agency is seeking to enforce a right in which the public in general has an interest and those where the public has no such interest, and it is held that the statute of limitations, while applicable to the latter character of actions, cannot be interposed as a bar where the municipality is seeking to enforce the former type of action. In these decisions, the view is taken that the plaintiff, in seeking to enforce a contract right, or some right belonging to it in a proprietary sense, may be defeated by the statute of limitations; *but as to rights belonging to the public and pertaining purely to governmental affairs, and in respect to which the political subdivision represents the public at large or the state, the exemption in favor of the sovereignty applies, and the statute of limitations does not operate as a bar.' "* [Emphasis ours.]

In this regard, it has been further said, in 34 Am. Jur., p. 314, § 399, as follows:

. . . "On the other hand, the weight of authority supports the view that the statute cannot be set up as a defense to an action by an incorporated state insane hospital to recover for board and medical attention furnished an inmate, where the hospital is owned and controlled by the state, is a mere governmental agency thereof, and all charges imposed for the care and maintenance of the hospital's inmates are for the benefit of the state and when collected go to the support of the hospital."

We are unwilling at this time to depart from our general rule that the statute limitations does not operate in matters where the public interest is concerned.

In the instant case, there is no showing that appellant's liability has in fact commenced, that is, there is no showing that appellant ever received notice of a determination by the constituted authority of the inability of the patient (principal) to pay all or any part of her accumulated account and that appellant was determined to be secondarily liable.

For the reasons stated herein, this cause is reversed and remanded for further proceedings consistent with this opinion.